As a preliminary matter, we filed a motion to hold this case in abeyance. In January of 1994, the petitioner sought to enter the U.S. to enforce a custody order involving his three U.S. citizen children. He had been granted custody of the kids. His wife took the kids, in violation of the order, from Africa to Washington. The petitioner was apprehended at the border of the United States and taken into custody by immigration officials. He was subsequently paroled into the U.S. and placed into exclusion proceedings for allegedly not having a valid entry document. In September of 1994, the immigration judge ordered the petitioner excluded and deported from the United States. Notably, he represented himself pro se at his IJ hearing. Petitioner appealed to the Board of Immigration Appeals, again pro se. In February of 2000, the Board of Immigration Appeals affirmed the decision of the immigration judge, although we submit that Mr. Demos did not receive notice of the BIA decision until late 2003. In November of 2003, the petitioner filed a motion to reopen with the BIA, requesting that the BIA reissue its earlier 2000 decision. The motion to reopen was denied, and Mr. Demos filed a petition for review with this Court. That petition for review was subsequently consolidated with the petition for review that resulted when the habeas petition filed by Mr. Demos was transferred from the district court pursuant to Real ID. Parallel to these exclusion proceedings, Mr. Demos became independently eligible to seek adjustment of status when his oldest son Andre turned 21 in late 2004. An applicant for adjustment of status under 8 U.S.C. 1255, INA 245, must establish that he was inspected and admitted or paroled into the United States, that he's eligible to receive an immigrant visa, and that a visa is immediately available. In early July 2006, petitioners submitted a complete application for adjustment of status to CIS. Whether this application is granted or denied depends solely on the discretion of the district director of CIS, as there are no issues of the Court today has no bearing on Mr. Demos's eligibility to adjust his status. By that, I mean an exclusion order, even if the Court were to rule against Mr. Demos, does not bar his eligibility to seek adjustment of status where, like Mr. Demos, the alien has been inspected and paroled. Recently published regulations pertaining to the adjustment of arriving aliens confirm this point. Therefore, holding the case in abeyance is appropriate to allow CIS to adjudicate petitioners' adjustment of status application. So when you say holding the case in abeyance, you mean deferring submission until we hear of the outcome of the adjustment? That's correct. That's correct. Again, the sole issue in the adjustment application is the district director's exercise of discretion. There are no criminal issues or other bars to adjustment that would prevent Mr. Demos from adjusting his status. Have you spoken to the government? Does the government agree with this? We have spoken with the government, and I'll have to let the government state its position. All right. It is our position that, again, that the Court should hold this case in abeyance. If the Court denies this request and reaches the merits, then we maintain that petitioners should prevail on the merits of his consolidated petitions for review. As I understand it, your petition for abeyance is to allow you to have time to do some other act. There is an alternative, and that is we can go ahead and decide this case, and then you can bring a petition to stay the issuance of the mandate, and you'd be in exactly the same position. We contend, Your Honor, that the Court doesn't need to reach the issues until such time as CIS exercises its discretion. I'm having a lot of trouble to get prepared to decide the case. If we put it into abeyance and you lose on your effort, we have to start all over again. As a matter of efficiency of the Court, it might work better for us. Does it cause you any prejudice if we go ahead and decide the case and allow you to ask to have the mandate held in abeyance? Does it cause you prejudice? It doesn't judge, but we maintain that Mr. Demos should prevail on his consolidated petition for review. Could you give me a yes or no on that one? I'm sorry. Can you repeat your question? Pardon? Could you repeat your question? Surely. If we go ahead and decide the case and allow you to petition to stay the mandate until you take care of your other legal affairs, does that cause you any – your client any prejudice? Well, we don't know what decision the district director – I'm afraid I can't say yes, then, Judge. Okay. Then you can't answer the question. Thank you. We don't know how the district director will exercise his discretion. If that's your answer, that's your answer. Although it is our position that the Court should hold Mr. Demos's case in abeyance, if the Court denies this motion and reaches the merits, we contend that Mr. Demos should prevail. In March of 2004, the Board of Immigration Appeals denied Mr. Demos's motion to reopen because, according to the BIA, the record reflected that its 2000 decision was correctly mailed to Mr. Demos. The regulations in due process require service, not proof of mailing. The regulations specifically state that a copy of the decision, BIA's decision, shall be served on the alien. Mr. Demos does not agree that the record reflects proof of mailing. The record contains a cover sheet dated February 7, 2000, in address to Mr. Demos. Even if we presume that the BIA decision was transmitted on that day, mailing does not necessarily equal service. The Court has held in such cases as Salta v. INS that there is a presumption a document mailed. Let me ask a clarifying point on that. Do you contend that the Board has to do something special other than put in the cover sheet to show that the notice was or decision was mailed? Well, the cover sheet, case law holds that the cover sheet may indicate that the BIA decision was mailed, but that it's a rebuttable presumption. And so what rebuts it? We contend that Mr. Demos's declaration stating that he never received the decision moreover his actions. Up until the summer of 2003, he presented himself in person two to three times a year at the INS to renew his employment authorization document and inquire about the status of his appeal. He appeared at the INS for more than three years after the BIA decision was issued in February of 2000. We contend that Mr. Demos's declaration stating he never received the decision plus his actions rebut the presumption of mail. So what should have been the outcome of this contest? He's rebutted the presumption. Then what should have happened next? It's our position that the BIA should reissue the decision, properly serve Mr. Demos so that he may take the appellate action. Just based on his declaration? We maintain that the case law states that a declaration alone may rebut the presumption that mail was issued. Well, in Salta, for example, Salta v. INS, the petitioner there apparently hadn't submitted any supporting documentation, and so the Ninth Circuit in that case remanded her case to the BIA to allow her to submit documentation to support her contention that she never received mail. But if there is a declaration and subsequent conduct on top of that, it's your position that that alone is enough to require BIA to reissue? That's enough to rebut the presumption of service in our position, and that's our position. Can I ask you a question? If a person moves, they're not going to receive the notice. So the BIA is a very big program. There's thousands and thousands of people. So they have an address that's left with them, and they mail it to that address. If a person's moved and they don't get it, does that mean that the BIA can't get forward unless the person actually receives it? Well, in that situation, the alien would have a responsibility to provide a change of address to the BIA. And if the alien did that properly, then the BIA still mailed the decision to the wrong address, then the alien provided a declaration to that effect. So the alien's got a responsibility to keep the BIA informed of the address so that the BIA can mail any documents. Did your client do that? The alien does. And in our case, Mr. Demos states in his rebuttal declaration that he remained at the address that he provided to the BIA until April of 2000, the BIA decision, transmittal cover sheet. He attempted to get a change of address. Pardon? Didn't he attempt to get a change of address, filed it with the INS? Well, that was a preliminary issue that we addressed, Judge, in our motion to reopen prior to a full review of Mr. Demos's file. The time we filed our motion to reopen with Mr. Demos's statement, he stated that he had resided at the address he provided to the BIA until April of 2000. Upon further review of the file, we learned that the BIA decision was issued in February of 2000 to that address. So the address that the BIA used is the one he was actually in, not the one that he said he was going to be in when he filed with the INS. It is. And so given that he was at that address If the INS had called the BIA and said, I've got a new address for you, it wouldn't have gotten to your client because he didn't move to where he said he was going to move to. So if the BIA had mailed this decision on February 7, 2000, which is the date of the transmittal cover sheet, given that Mr. Demos was still at that address, he should have received it, except for that his statement and his actions indicate that he didn't. And we know that every once in a while the USPS makes a mistake, and the presumption of delivery is lower where a document is sent regular mail as opposed to certified mail. So the BIA says we sent it to where he was. Your client said I was living there but didn't get it. And therefore, the BIA loses and has to redo. I suppose we're going to have to decide this issue sooner or later, but what should the BIA have done? Again, we submit that the BIA should reissue its decision. What should the BIA have done initially? Perhaps the BIA did in fact mail the decision on that day and something went awry in the course of mailing. They've gone from certified mail per the statutory authority now to regular mail. So in the old regime, they always had certified mail to rely on. Is that correct? That's correct. Now, if your client has to sign any document that's sent, then if your client doesn't sign for it, then it's never received. Not necessarily, but in this case, again, the document was not, at least the record doesn't reflect that the document or the decision was sent certified mail. And I would just note that Mr. Deimos' declaration is not contested by the government nor is his assertion that he was going into INS regularly for over three years after the decision to check on the status of his case and renew his. So is it your position that each time one of these comes up and that your client files an affidavit, there's got to be a fact-finding? We have to have it sent to an INS somebody to decide whether or not your client's telling the truth? Well, it's In this case, we don't believe there needs to be a fact-finding because Mr. Deimos' statement is uncontested by the government, as are his actions. The government doesn't contest. He made a statement, but maybe they don't believe him. I mean, a lot of people make statements that aren't true. I'm just trying to figure out how we work this out where your client says, I didn't receive it, and the government says, I mailed it there. Do we have to hold a hearing to find out, or we just continue to mail them until finally, I'm just a little concerned. It's a very big operation with the INS. I understand. And I want to know what we require of them. Well, again, the BIA decision states that the record reflects mailing. The regulation and due process require service. The government takes the position of the BIA, which is that the decision was mailed. We don't agree that it was necessarily mailed, but even if it was, it's our position that Mr. Deimos did not receive that decision. Let me ask you this. Did Mr. Deimos get voluntary departure? Voluntary departure would not have been available to him in exclusion of proceedings. Has he been deported? No, he's in the United States. Thank you. Good morning, John Unshine, behalf of the United States Attorney General. Your Honors, with regard to the motion for abatement that was filed just last week in this case, the government's position is more along the lines of what Your Honor was asking. And that is, we believe the court should reach the merits of the underlying petition for review here, stay the mandate for a period of perhaps 90 days, and require the petitioner, Mr. Deimos, here to file a status report on his application for relief. As Ms. Dorchert indicated, Mr. Deimos was technically eligible to file for this new form of relief in 2004 when his son turned 21 and waited until last week, apparently, to do so. That said, she is correct, and the outcome of this decision actually will not prejudice that application. This court can file it in favor of the government, and that application can be granted, and essentially, Mr. Deimos would have a legitimate reason to stay in the United States and actually have the law on his side as a lawful permanent resident at that point. That said, for purposes of judicial economy, this case has been going on for some time. The parties have been briefed. The record is not going to change at any point. It's closed, of course. And the government thinks that the court should reach a decision on this case before it, and then stay the mandate to wait and see what happens with the petition that is pending before the CIA's- As the parties are aware, there's another panel of this court that is addressing the notice issue. So that case will have priority over this case in terms of the mailing issues. So there may be some internal court protocol that may cause some delay in any event. I'm not sure if I follow you, Your Honor. There's another case that has the same issue on the notice of, you know, the second argument on the merits of receipt. I have to address whether or not what the BIA's obligation is to mail and rebut an affidavit. So that issue, we can't, we as a panel can't overwrite another panel that is already working on the issue. So in other words, there may not be a decision forthcoming for other reasons. Well, Your Honor, actually the case has been consolidated as far as I know. Those two cases would be the- Singh? Different- I'm sorry, Singh. Are you talking about Singh? No, I'm not, Your Honor. Well, I am. Okay. I wasn't aware of that. I didn't think you would be. No, I wasn't aware of that. But yes- You might not be. You might be. In any event- It's submitted before. We're not, this case isn't even submitted yet. Okay. So we are going to have to wait in any event for the decision in that case. I understand. That's the way it works. Sometimes panels get the same issue, and whoever gets submitted first, which case is argued and submitted first, has priority. So we have to defer. Somebody else may decide your case, but- I understand that. Well, this Court knows best how to husband its resources, so- Well, I don't know about that. Well, as far as the merits of the underlying petition for review here, Your Honor, it's the government's contention that as a leader-  you know, we're going to have to do something about this, because there's a reason that they can't decide it, or the case goes away, or the person scowns. So don't let us limit you from your arguments, because we don't know what's going to happen, other than what we've told you. There is another panel that currently is working on that issue that has priority. I appreciate that, Your Honor. I think you could decide it, and it could be called a bonk, and it could be even longer. No, please argue. Please argue. That's what I intend to do, Your Honor. I don't mean to suggest otherwise. I was addressing the concept that I don't want the parties to react to a delay in our responding on the merits in the context of the request for abeyance. You know, you're debating what we should do, and I said there's another factor in this case. I don't believe the government would react to that. And with respect to the petition for review, Your Honors, the board, as a legal matter and as a matter of due process, did its job in this case. And the date that it issued its decision- Counsel, before you, do you dispute, or is there any dispute as to the board proceeding under subsection F, the service of board decisions? Is that what you're relying on? Yes, Your Honor. Okay, so you rely on that. That's CFR 1003.1F. That's correct, Your Honor. And it says, and a copy shall be served upon the alien. Okay, so you're arguing in the context that the board has to serve notice of its decision. Right. All right. That's right, Your Honor. And we're arguing that service was met in the situation when they mailed the presumption is, of course, of administrative regularity, that the board actually mailed its decision to Mr. Demos on February 7, 2000, and it was reasonably calculated to reach him by regular mail. Now, just to back you up there, where's the presumption of regularity that arises? Where's the authority for that? Well, as far as mailing, Your Honor, of the board's decision, I'm not so sure there is a regulation that indicates the method by which Mr. Demos would have been properly notified by. There used to be a statutory authority that you could, the board could, or had to, use certified mail. Right. And to whatever extent the cases assume certification through the mail process, under the new regime, as I understand it, the board is using regular mail. That's correct, Your Honor. So do you have any authority that suggests that there is any presumption of regularity of mailing or delivery in the regular mail context? Well, Your Honor, I believe the case of, that we cite in our brief of Hartoonian, indicates that, to that extent, if I may have a moment, that there is a presumption that mail is affected by regular mail effects delivery, which, of course, that presumption, unlike the certified mail regime, the presumption can be overcome in both regards, but it's easier overcome with regard to the regular mail context. And that's Hartoonian? Hartoonian. And the cite for that would be 87 Federal 3rd 374. And in this regard, of course, the citation would be 87 Fred 3rd 374. Thank you. And that's a Hartoonian or a Cartoonian? Hartoonian, H-A-R-O-U-T-U-N-I-A-N. Thank you. And that's after, that's a regular mail case? Actually, Your Honor, this case was in 96, so it may not have been. That was my question. As far as the statutory authority goes, I believe in 8 U.S.C. 1229A is where they spell that out, and I don't have the exact cite for you, I apologize for that. But again, that involves the context of delivery when it comes to hearing notices and whatnot. And I believe, I'm not exactly sure that it speaks to the delivery of a final decision of the board, but we're relying on the regulation 8 CFR 1003.1F and any appropriate statutes, which I believe that one, which I don't have the exact cite for, would be appropriate in this case. It talks about service, and SALTA does address the regular mail regime. Right. In that case, there were, as counsel said, there are no affidavits, so they remanded it for a hearing. In this case, there are, there is an affidavit, and there is the kind of conduct that SALTA took into consideration, absent the affidavit. So under these circumstances, what is the regime, or what does the government contend the regime is as far as the board establishing that it actually served the notice? Well, Your Honor. As you said, there is a rebuttable presumption. So you now have an uncontested record in this case that there's a declaration of non-receipt and conduct inconsistent with having gotten receipt, and indeed, conduct indicating that the person was actively pursuing the status. So what more would have to be done in the government's view to rebut the presumption? Well, I believe, Your Honor, that the case in SALTA should be better clarified first, and that SALTA actually had held that where an alien initiates proceedings to obtain a benefit, shows up to a proceeding subsequent to that, has no motive not to show up thereafter, and then submits an affidavit that states he or she or any other responsible person at that home did not receive service, that that may ordinarily be enough. It doesn't mandate that that's the case. This case is slightly different because it's an exclusion proceeding. These proceedings were initiated not for Mr. Demos to obtain a benefit, but rather to exclude him from the United States as someone that had abandoned his lawful permanent residence status. Moreover, his declaration, to be very clear, the motion to reopen states that the board erred because they sent it to the wrong address. That's the initial premise. Of course, they didn't have the record at that time. After the fact, it was learned via the affidavit, of course, the government noticed that because they knew in the board mail's decision that Mr. Demos was, in fact, living at that home. And he says in his affidavit that we normally receive mail, or I normally, or I'm paraphrasing, of course, we never had problems with the mail here before. In SALTA, it also indicates the responsibility, and I see I've gone over my time already, but real quickly, the responsibility also of providing an affidavit by any other member of the household who could be responsible for receiving mail. It's unclear if Mr. Demos lived by himself or not. All he states is I didn't get it. But, of course, the premise of the motion to reopen was that I wasn't living there. And the board, under that context, appropriately found that in its decision we mailed it to the correct address of record at that time. Is the solution to this that he finally get it in his hands, the decision of the board, is that the solution of the case? Is that the solution of the case, Your Honor? I believe that, well, obviously, he has the board decision in his hand. And the real reason, obviously, is before us here is because the time for filing a petition for a review from that decision has since elapsed. And with that regard, even if he received a decision when he asked for it, it wouldn't have helped him in filing a petition for a review. I understand there's some ramifications, but it strikes me that we're going to a lot of trouble that not even this panel can solve. When you could have brought it with you today and handed it to his lawyer and we'd say we don't need an oral argument, we don't need you. It doesn't cure the lack of time to meet the statute of limitations, unfortunately. No, it does not, Your Honor. I mean, isn't – eventually, if you lose on OLS, aren't you just going to serve? He's already been served, Your Honor, through a FOIA request, I believe they received. Reserved? Not by the board. No, you're right. He's never been served, according to his – According to Mr. Demos, he's never been served. That's correct. And we're worrying about that and have for the last quite a few months. But eventually, if you lose on it, you will then reserve. No. Well, it would be up to this Court to decide whether or not they would want to remand it for a further evidentiary hearing under SALTA or not. And then at that point, the board would determine whether or not it should reissue its decision if that was the Court's decision in this case. And, of course, it's up to the board – up to the Court here to decide what to do with this matter. But that stated – again, we believe that the board did its job in this case. In this case, let's just address Judge Wallace's concern. If we were to decide that there was – that there was enough to create the rebuttable presumption, is it the government's position then that rather than decide, as counsel is arguing for Petitioner, that that ought to be enough because it's unchallenged that the remand should be to the BIA to give it the option of having a hearing if they want to contest whether or not there's credibility to the non-receipt? Well, I think more appropriately, Your Honor, I think that what we need to look at is what the record was before the board at that time and what was being asked of it. The board was being told that the service was on the wrong address. No, I understand what you're asking. Assume you lose on that argument. Then assume what the record is that we're finding. I'm not saying we have or anything – or will. I just want to know, in process, does the board want the opportunity to have a hearing as to whether there's merit in what Mr. Demos said in his declaration, or would it then at that point say, all right, you didn't buy our argument about so on and so – you know, what the record was and everything, so just go ahead and remand to the board to Well, Your Honor, I think the board would probably most appreciate either the opportunity to just reissue the decision or to have further evidentiary hearing on the matter. Of course, its resources are very scarce as well, and it may just be easier to issue a decision in this case if this Court finds that the presumption was rebutted. Okay. Yes.  All right. Thank you, counsel. Thank you. Government counsel went over longer than you went over, but – okay. You have no rebuttal? All right. Thank you, both counsel. Demos v. Gonzalez is submitted.
judges: Wallace, Wardlaw, Fisher